IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NORTHLAND INSURANCE COMPANY
LLOYD'S LONDON
S&T TRUCKING COMPANY, INC. (INSURED)                        PLAINTIFF

            v.            Civil No. 08-2075

KANSAS CITY SOUTHERN RAILWAY
COMPANY (KCSR)                                             DEFENDANT

                        MEMORANDUM OPINION

        On the 5th day of May, 2009, the captioned matter came on for
bench trial.  Plaintiffs Northland Insurance Company and Lloyd's
London appeared through representatives, and all plaintiffs were
represented by counsel. Defendant appeared through its
representative and was represented by counsel.  The Court heard the
testimony of witnesses, received documentary evidence, and now
makes the following findings of fact and conclusions of law:

        1.  The allegations of plaintiffs' Complaint are that a
tractor-trailer rig driven by Kenneth Harrington ("Harrington") and
owned by S&T Trucking Company, Inc. ("S&T") was involved in a
collision with a train owned by the Kansas City Southern Railway
Company ("KCS"), resulting in property damage to the S&T truck and
its freight.  They allege this collision was caused by negligence
on the part of KCS, to wit:

        *    failing to post warning signs that the railroad crossing
was abnormally dangerous or that there was a load weight limit; and

        *    failing to maintain the railroad crossing.

        2.  KCS counterclaimed against S&T, alleging that it

sustained damage to its locomotive as a result of negligence on the part of S&T's driver Harrington, to wit:

* failing to keep his vehicle under control;

* failing to observe the rules of the road;

* failing to yield the right of way to the KCS train;

* failing to stop his vehicle far enough from the crossing to allow the train to clear the crossing;

* operating the vehicle in an unsafe manner; and

* failing to follow the instructions of a third party to use a different crossing.

3. The accident in question occurred on August 23, 2005, at a railroad crossing on Polk County Road 13 near Hatton, Polk County, Arkansas. Harrington, an employee of S&T, had been to a quarry located near the crossing and loaded an industrial drill on his lowboy trailer.

4. A lowboy has very little ground clearance, being 2-3 feet closer to the ground than a standard flatbed trailer. Its advantage is that it allows the haulage of tall loads which would not pass underneath bridges and overpasses were they loaded on a trailer the normal height off the ground. Its disadvantage is that it sits so close to the ground that it cannot easily traverse uneven roadways.

5. Upon leaving the quarry with the drill, Harrington encountered Darrell Hinsley ("Hinsley"), who worked at the quarry. Hinsley, noting that the loaded lowboy was riding only about six

inches off the ground, contacted Harrington on his CB radio and warned him that he probably would not be able to cross the railroad crossing on that particular route out of the quarry, and that a train was approaching.  Hinsely recommended a different exit route that would not require crossing railroad tracks.  The alternate route would not have required Harrington to turn around, but only to turn left instead of right when he reached Polk County Road 13.

6.   Harrington did not take the alternate route recommended by Hinsley, attempting instead to cross the tracks at the location of the accident.  As can be seen from photographic evidence, Harrington's route led down a modest slope to the crossing, which was level, and then down another slope to the highway.  As the tractor began to go down the slope to the highway, the lowboy bottomed out and lodged on the tracks.  Before it could be dislodged, it was struck by a KCS train.  The tractor, trailer, drill, and KCS train and tracks all sustained damage.

7.   Several witnesses testified about the physical configuration of the crossing and its history.  Polk County Deputy Sheriff Eddie Price, who investigated the accident, was of the opinion that the grade of the road as compared to the grade of the crossing was a contributing factor in the accident.  He testified that the crossing itself was smooth and passable, however, and he was not aware of any accidents at the crossing previous to Harrington's.

Polk County Judge Ray Stanley testified that, with the

exception of one two-year term, he had been the County Judge of Polk County since 1992, and that he was familiar with all the county roads under his jurisdiction.  Judge Polk was not aware of any unsafe conditions at the crossing in question at any time before the date of the accident.

Darrell Hinsley, lives two miles south of the crossing and works at the quarry, was not aware of any truck ever getting stuck at the crossing, but testified that trucks  entering and leaving the quarry ordinarily used a marked entrance about two miles north of the route taken by Harrington.  He had never seen anything in the area between the tracks at the crossing that would cause a problem, but was concerned -- given the slope of the roadway and the minimal clearance of the lowboy -- that Harrington could not clear the tracks at that location.

8.   Under Arkansas law, a party claiming damages on a theory of negligence must prove, by a preponderance of the evidence, that it has sustained damages; that the party from whom it seeks to recover was negligent; and that such negligence was a proximate cause of its damages.  **AMI 204.**  Negligence is "the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence in this case." **AMI 302.**

The facts of this case will not support a recovery for

plaintiffs on a theory of negligence, but will support a recovery for KCS on that theory.   As far as the evidence showed:

* no vehicle had ever become lodged on the crossing before the accident, which might have alerted KCS to post a "hump crossing" sign;

* there was no roughness on the crossing or other maintenance problem that might have contributed to the accident;

* the slope of the road and the configuration of the crossing were all clearly visible to an approaching driver; and

* Harrington was warned about the crossing and that he probably could not clear it in his loaded vehicle.

There was no evidence that a reasonably careful railroad company would have altered the configuration of the crossing, or carried out any maintenance that was not carried out. All the evidence points to the conclusion that Harrington disregarded what he surely knew about the clearance of his rig; what he could clearly see about the slope of the road above and below the crossing; and Hinsley's explicit warning.

9.   Under Arkansas law, the measure of damages to personal property is the fair market value of the property immediately before and immediately after the occurrence.  In determining this difference, the trier of fact may take into consideration the cost of repairs.  **AMI 2227.**

KCS put on evidence of the following items of damage:

* $24,326.07 to repair mechanical damage to its train;

* $7,232.88 for costs incurred due to train delays;

* $752.90 for costs of an additional train crew;

* $39.68 for taxi fare to bring the additional crew to the site of the train; and

* $1,139.93 to repair damage to the tracks.

These items, which total $33,491.46, are recoverable.

KCS also put on evidence of an element of damage it designated "additives," which as far as the evidence shows is nothing more than the ordinary cost of doing business for KCS.  There being no evidence any such "loss" was proximately caused by negligence on the part of S&T, the Court will not award damages for this item.

9.   Judgment in this matter -- consistent with the Court's findings of fact and conclusions of law expressed herein -- will be entered by separate document, as required by **F.R.C.P. 58(a)**.

**IT IS SO ORDERED**, this 14th day of May, 2009.

>     **/s/ Jimm Larry Hendren**
> **JIMM LARRY HENDREN**
> **UNITED STATES DISTRICT JUDGE**